UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-04070-MWC-DMK **(ADELANTO)** Date: August 26, 2026

Title: Miguel Sanchez Gonzalez v. Department of Homeland Security

Present: The Honorable Michelle Williams Court, United States District Judge

| | |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: N/A | Attorneys Present for Defendants: N/A |

**Proceedings: (IN CHAMBERS) ORDER DENYING PETITIONER MIGUEL SANCHEZ GONZALEZ'S (A No. 246-061-867) *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER (DKT. [8]) AND ORDERING RESPONDENTS TO SUBMIT COPIES OF PETITIONER'S CRIMINAL CHARGES**

Before the Court is *pro se* Petitioner Miguel Sanchez Gonzalez's ("Petitioner")[1] *Ex Parte* Application seeking a temporary restraining order ("TRO Application") ordering Respondents[2] to release Petitioner and restore Petitioner to the *status quo* prior to his detention. *See* Dkt. # 8 ("*Appl.*"). Respondents filed a response, arguing, in part, that Petitioner is ineligible for bond pursuant to the Laken Riley Act. *See* Dkt. # 9 ("*Opp'n*") at 2; *see also* Dkt. # 7 ("*Response*") at 3.

The Court issued a standing order on August 13, 2026, enjoining Petitioner's removal from the District pending further orders from the Court, and setting a briefing

[1] Because Petitioner is proceeding *pro se*, the Court is "obligated to liberally construe [his] documents," looking "to the contents of [his] filing[s] rather than [their] form." *Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) (cleaned up), *cert. pet. granted sub nom. Nielsen v. Watanabe*, No. 25-417 (June 22, 2026); *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (same).

[2] The habeas petition lists only one Respondent—the United States Department of Homeland Security—while the TRO Application lists Pam Bondi, Todd W. Blanche, and Josh Johnson collectively as Respondents. *Compare* Dkt. # 1, ¶ 3, *with* Dkt. # 8 at 1. Given Petitioner's *pro se* status, the Court liberally construes Petitioner's filings and infers that Petitioner intended on bringing this action against all four aforementioned Respondents.

schedule on Petitioner's Application. *See* Dkt. # 10. For the reasons set forth below, the Court **DENIES** the Application.

I. Background

Because neither the Petition (Dkt. # 1) nor the TRO Application (Dkt. # 8) provides a detailed background of the case, the Court derives the background facts from Petitioner's Form I-213, submitted and attached with Respondents' Opposition brief. *See* Ex. A, Dkt. # 7-1 ("*Form I-213*").

Petitioner is thirty-eight (38) years old and is a native citizen of Chiapas, Mexico. *See id.* at 1. Petitioner has lived in the United States for eighteen (18) years and has two United States citizen children under his care. *See Appl.* at 2. Petitioner is the only breadwinner and provides housing, food, and medical care to his family. *See id.* Petitioner pays taxes, has a fixed address in California, and has maintained steady employment for the past ten (10) years. *Id.*[3]

On June 10, 2008, the Los Angeles County Sheriff's Department ("LASD") in Santa Clarita Valley arrested Petitioner for Disorderly Conduct. *See Form I-213* at 4. The case has since been dropped. *Id.*

On July 30, 2026, the LASD in Santa Clarita Valley arrested Petitioner for attempted rape. *Id.* On July 1, 2026, at approximately 1:30 p.m., "Ventura Team 3, equipped with high-visibility identifying patches on ICE-issued body armor, and plain clothes with ICE issued badges," arrived at the Santa Clarita Valley Sheriff's Station to target Petitioner. *See id.* at 3. The team's objective was to locate and apprehend Petitioner based on prior investigative leads that matched his FBI number on file to his latest arrest. *Id.* The team observed that Petitioner closely matched the physical and descriptive characteristics of the suspect. *Id.* The team approached Petitioner and engaged him in conversation to confirm his identity. *Id.*

During this encounter, Petitioner was uncooperative and did not respond to the officers' questions. *Id.* The team confirmed the subject's identity upon observing his

[3] Though the TRO Application represents that Petitioner is the sole breadwinner of his family and has a history of steady employment, Petitioner's Form I-213 notes that Petitioner is "Unemployed or Retired." *See Form I-213* at 1. This factual discrepancy, however, is likely a result of Petitioner's refusal to cooperate with authorities upon his arrest. *See Opp'n* at 2.

LASD inmate wristband.[4] *Id.* Members of the team then interviewed Petitioner in Spanish. *Id.* at 4. During this interview, Petitioner admitted he did not possess legal status to remain in the United States, stating that he was from Chiapas, Mexico, and that he arrived in the United States a few years prior. *Id.*

The team reviewed Petitioner's prior investigative information and determined that probable cause existed to apprehend the subject. *Id.* At approximately 2:25 p.m., immigration authorities took Petitioner into custody in accordance with ICE procedures. *Id.* Team members identified themselves as ICE officers and explained to Petitioner that he was under arrest. *Id.* Officers informed Petitioner of his rights and the reasons for his detention. *Id.* Following his arrest, ICE personnel transported Petitioner to the Ventura Sub-office Staging Facility in Camarillo for further processing, where he arrived at approximately 4:30 p.m. *Id.*

At approximately 4:55 p.m., during processing, Petitioner claimed to have pain in his chest. *Id.* Paramedics arrived at the Ventura ERO Office to assess Petitioner, and thereafter, transported Petitioner to the Saint John's Medical Center in Camarillo for further evaluation. *Id.* The Medical Center released Petitioner at approximately 7:10 p.m.

During the processing interview, the ICE team reviewed Petitioner's records and questioned Petitioner regarding his compliance with immigration requirements. *Id.* Officers could not determine beyond reasonable doubt that Petitioner willfully neglected to register in the USCIS Alien Registration System, as required by 8 U.S.C. § 1306(a).

On that same date, authorities served Petitioner a Notice of Rights and Request for Disposition. *See* Ex. B, Dkt. # 7-2 at 2. Petitioner refused to request disposition. *Id.* An immigration officer stated they read Petitioner's rights to him in Spanish. *See id.* Authorities also provided Petitioner with a Notice to Appear ("NTA"). *See id.* at 3. The NTA alleges that Petitioner is not a U.S. citizen, is a native and citizen of Mexico, entered the U.S. on an unknown date at an unknown location, and was not admitted or paroled after inspection. *See id.* The NTA charged Petitioner that he is subject to removal pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), and ordered Petitioner to appear before an Immigration Judge ("IJ") in the Adelanto Detention Facility on July 13, 2026, to show why he should not be removed from the U.S. *See id.* An

[4] Petitioner was booked into custody as "JOHN DOE," as he refused to cooperate with their investigation in a possible rape case where he was named as the primary suspect. *Form I-213* at 3–4.

immigration officer read this NTA to Petitioner in Spanish, but Petitioner refused to sign the document. *Id.* at 4. On July 16, 2026, the Immigration Court set a Master Hearing for August 21, 2026. *See* Ex. C, Dkt. # 7-3 at 2.

II. Legal Standards

A. *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

B. Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp.

2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III. Discussion

A. *Ex Parte* Application and *Mission Power* Factors

Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody for over one month, since his June 30, 2026 arrest. Petitioner has been unable to earn wages or otherwise provide for his family. Petitioner represents that he is his family's sole breadwinner and that his family is in dire need. *See Appl.* at 2. If the Court heard the motion according to regularly noticed motion procedures, that would leave Petitioner delayed in detention without notice of the deficiencies in his Petition and Application. Thus, after over a month in continued detention, the Court finds that bringing this Application on an *ex parte* basis is warranted.

B. Request for Relief from Detention

*i. Likelihood of Success on the Merits*

Petitioner raises several legal theories to argue that release is warranted. *See generally Appl.* In their Opposition brief, Respondents assert that the Laken Riley Act subjects Petitioner to mandatory detention because Petitioner was arrested on charges for rape. *Opp'n* at 3.

Section 1226(c) of the INA "mandates detention during removal proceedings for a limited class of deportable aliens[.]" *Demore v. Kim*, 538 U.S. 510, 517–18 (2003). In January 2025, Congress amended § 1226(c) to subject additional categories of noncitizens who have had interactions with law enforcement to mandatory detention without a bond hearing. LAKEN RILEY ACT, PL 119-1, January 29, 2025, 139 Stat 3.

Specifically, Title 8 U.S.C. § 1226(c)(1)(E) provides that:

> The Attorney General shall take into custody any alien who--
>
> . . .

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (E)(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of . . . any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. §§ 1226(c)(1)(E)(i)–(ii).

In *Demore*, the Supreme Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process," and that mandatory detention without a bond hearing is constitutionally permissible. *See* 538 U.S. at 531. "To avoid 'serious due process concerns,' 'courts have construed the Laken Riley Act to apply only where an individual is *currently* charged with or arrested for the enumerated crimes[.]'" *Singh v. Warden of Desert View Facility*, No. 5:26-cv-02671-ACCV, 2026 WL 2247527, at *2 (C.D. Cal. July 29, 2026) (emphasis in original) (citation omitted). "Thus, mandatory detention is not required when charges are never filed or where an individual has been acquitted." *Id.* (cleaned up) (internal quotation marks, alterations, citation omitted). "By extension, if an individual 'is arrested for' a qualifying offense but is never charged with that offense, that individual's case is no longer progressing" from an arrest to a charge to a conviction under the plain terms of § 1226(c)(1)(E)(ii). *Aguillares v. Chestnut*, No. 1:26-cv-04234-DJC-JDP, 2026 WL 2455215, at *2 (E.D. Cal. Aug. 21, 2026) ("Requiring mandatory detention because of a mere arrest for which prosecutors apparently lacked sufficient evidence to charge an individual with a crime would raise serious due process concerns.") (citation omitted).

Here, the Laken Riley Act applies to Petitioner, given that he has been charged with being inadmissible under INA § 212(a)(6)(A)(i) and because he was arrested for rape, which "qualifies as an aggravated felony under the INA" that necessarily results in serious bodily injury to another person. *See Form I-213* at 4; Ex. B, Dkt. # 7-2 at 3; *see also United States v. Gonzalez-Reyes*, 172 F.4th 1088, 1095 (9th Cir. 2026); Model Penal Code § 213.1. Though Petitioner is proceeding *pro se*, he has failed to file a Reply brief to dispute that his detention is governed by 8 U.S.C. § 1226(c). *Morales-Francisco v. Chestnut*, No. 1:26-cv-04784-DC-CKD P, 2026 WL 1983941, at *2 (E.D. Cal. July 9, 2026). "It is the petitioner's burden to prove his custody is in violation of the Constitution, laws or treaties of the United States." *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir. 1996) (citation omitted).

As Petitioner failed to reply to Respondents' arguments, he "fails to show respondents were required to provide him with a pre-deprivation or a post-deprivation bond hearing" and further "advances no argument that the Laken Riley Act does not apply[.]" *Morales-Francisco*, 2026 WL 1983941, at *2. Similarly, though Petitioner challenges his detention on several due process grounds, he "did not challenge the applicability of the Laken Riley Act on due process grounds in his Petition." *Singh*, 2026 WL 2247527, at *3 n.1. Petitioner has therefore failed to satisfy his initial burden.

Nevertheless, the TRO Application represents, in part, that "Petitioner have no [sic] Felony / aggravated and or [sic] any pending case at this time," while Respondents' Form I-213 represents that Petitioner's rape charge "is still pending." *Compare Appl.* at 2, *with Form I-213* at 4; *see also Pet.* at 7 ("Petitioner have no [sic] Felony or pending case."). Given this factual dispute, it is unclear whether there are any active charges for rape pending against Petitioner. Accordingly, in light of the disputed facts, injunctive relief is also improper based on this preliminary record. *See, e.g.*, *Torres v. Milusnic*, 472 F. Supp. 3d 713, 734 (C.D. Cal. 2020) ("The disputed facts as to the safety measures implemented at Lompoc precludes the Court rom issuing a temporary restraining order at this stage . . .").

For these reasons, the Court finds that Petitioner has failed to demonstrate a likelihood of success on the merits (or serious questions going to the merits). Petitioner failed to carry his burden to show the Laken Riley Act does not apply, there is, at minimum, a dispute in the record regarding whether there are any active charges for rape pending against Petitioner. "Because it is a threshold inquiry, when a [petitioner] has failed to show the likelihood of success on the merits, [the Court] need not consider the remaining three *Winter* elements." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (cleaned up). The Court therefore **DENIES** Petitioner's TRO Application (Dkt. # 8). However, because the Court's due process concerns are not extinguished, the Court declines to dismiss the Petition based on this record. Instead, the Court **ORDERS** Respondents to file copies of all pending and active criminal charges against Petitioner by no later than **Tuesday, September 1, 2026**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-04070-MWC-DMK **(ADELANTO)** Date: August 26, 2026

Title: Miguel Sanchez Gonzalez v. Department of Homeland Security

IV. Conclusion

For the foregoing reasons, the Court **ORDERS** as follows:

1. Petitioner Miguel Sanchez Gonzalez's *Ex Parte* Application for Temporary Restraining Order (Dkt. # 8) is **DENIED**.

2. By no later than **Tuesday, September 1, 2026**, Respondents **SHALL** submit all copies of active and pending criminal charges against Petitioner.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ